

FILED (SG)
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

07 JUL 23 PM 1:55

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE WESTERN DISTRICT OF KENTUCKY

Donald C. FitzGerald, an individual,

     Plaintiff,


CIVIL No. 3:07-CV-382-R

v.


Citibank S.D., n.a., an enterprise

     affecting interstate commerce


Mapother & Mapother P.S.C. an enterprise

     affecting interstate commerce


Christine D. Campbell, a predicate actor

     Whose acts of fraud, mail fraud, and

     extortion were facilitated by

     affiliation with Citibank S.D. n.a.


Mervin W. Warren Jr., a predicate actor

     Whose acts of fraud, mail fraud, and

     extortion were facilitated by

affiliation with Citibank S.D. n.a.

Kenneth G. Belt, a predicate actor

Whose acts of fraud, mail fraud, and

extortion were facilitated by

affiliation with Citibank S.D. n.a.

Heather R. Peters

Whose acts of fraud, mail fraud, and

extortion were facilitated by

affiliation with Citibank S.D. n.a.

Donna. Pearson, a predicate actor

Whose acts of fraud, mail fraud, and

extortion were facilitated by

affiliation with Citibank S.D. n.a.

John Harrison

a public official records

verify aids and abets schemes

of fraud and extortion,

John Aubrey

    a public official records

    verify aids and abets schemes

    of fraud and extortion,

Defendants.

Plaintiff, Donald C. FitzGerald, moves this court under authority of <u>Federal Rules of Civil Procedure,</u> rule 12(b)(1)[1] <u>and</u> 18 U.S.C. § 1964(a)[2]&(c)[3] <u>and</u> for reason of fraud/<u>Federal Rules of Evidence,</u> rule 201(d)[4] notice to the court of the how the debt buying racket, a national plague, works and how Citibank S.D. N.A.., Mapother & Mapother P.S.C., Christine D. Campbell, Mervin W. Warren Jr., Kenneth G. Belt, Heather R. Peters, Donna. Pearson, John Harrison, John Aubrey  have violated the law.

Brief in support

    Donald C. FitzGerald's complaint is against Citibank S.D. N.A. <u>and Named actors in a scheme of fraud, mail fraud, and extortion rising to a level of racketeering.</u>  This court is noticed: the goal of the statute (18 U.S.C. § 1964(a)[5]&(c)[6]) was to create "a system of 'private attorney generals' who will be able to aid the effective enforcement of the Act (Civil RICO)." See Thomas v. Meyers-Dickson Furniture Co., 479 F.2d 740, (5th Cir. 1973) at page 748.  All competent jurists know and understand that for the court to have subject matter jurisdiction to hear a counterclaim, the counterclaim must arise from

3

the same set of transaction occurrences and proceed under the same theory of law. This court is in want of an explanation of how Citibank S.D. N.A. claim "on an open account" is properly before this court as arising from acts condoned by Citibank S.D. N.A. including fraud, mail fraud, and extortion.

It is also true that this court is deprived of subject matter jurisdiction to hear a putative counterclaim from Citibank S.D. N.A. or Mapother & Mapother for reason of fraud – fraud deprives the court of subject matter jurisdiction. Citibank S.D. N.A., by and through putative counsel, has asserted a false claim as Citibank S.D. N.A. in fact charged off and sold evidence of debt and now Christine D. Campbell, Mervin W. Warren Jr., Kenneth G. Belt, Heather R. Peters, Donna. Pearson, John Harrison, John Aubrey confesses their criminal misconduct in violation of 18 U.S.C. §§ 1341[7] & 1962[8] as well as KRS 514.080 Theft by extortion; KRS 506.120 Engaging in organized crime; and KRS 434.874 Trafficking in financial information.

## Memorandum of law

It is a "settled proposition that congressional goals underlying the Truth-in-Lending Act include the creation of a system of *private attorney generals* who will be able to aid the effective enforcement of the Act." *Sosa v. Fite*, 498 F. 2d 114, 121 (5th Cir.1974). To effectuate this goal, Congress has provided for mandatory fees to all successful plaintiffs, realizing that "most TILA plaintiffs are not 'model borrowers.'" *Semar v. Platte Valley Fed. Sav. & Loan Assoc.*, 791 F.2d 699 (9th Cir.1986). Therefore, "Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions." Id. - From *Clay v. Johnson*, 77 F.Supp.2d 879, 887 (N.D. Ill. 1999). TILA is a prophylactic measure that creates a system of "*private attorneys general*" to aid its enforcement. *McGowan v. King*, 569 F.2d 845, 848-49 (5th Cir.1978). In order to penalize non-complying creditors and to deter future

violations, these private attorneys general may recover the statutory penalties even if they have not sustained any actual damages, or even if the creditors are guilty of only minute deviations from the requirements of TILA and implementing Regulation Z. *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641, 647 (8th Cir.1980); *Charles v. Krauss Co., Ltd.*, 572 F.2d 544, 546 (5th Cir.1978). - From *Davis v. Werne*, 673 F.2d 866 (5th Cir.1982). "A prevailing claimant acts in the role of a ***private attorney general*** to enforce a policy that Congress deems of the highest priority." *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2696 (1986); *Christiansburg Garments v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694 (1978); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964 (1968). - From *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13 (N.D. 1995). Both the Clayton Act and the Racketeer Influenced and Corrupt Organizations Act (RICO) share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "***private attorneys general***," dedicated to eliminating racketeering activity. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 151, 107 S.Ct. 2759 (1987). In addition, civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate." Id. - From *Rotella v. Wood*, 528 U.S. 549, 557-58, 120 S.Ct. 1075 (2000).


Mandatory judicial notice

This court is noticed of 18 U.S.C. § 4

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

28 U.S.C. § 1361

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

### Attorney's oath

I do solemnly swear that I will support, protect and defend the Constitution of the United States; that I will do no falsehood, or consent that any be done in court and if I know of any I will give knowledge thereof of the judges of he court, or some one of them, that it may be reformed; <u>I will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same;</u> I will delay no person for lucre or malice, but will act in the office of attorney according to my best learning and discretion, with all good fidelity as well to the court as to my client, so help me God.

### How the debt buying racket works

(1). Banks make consumer loans on unilateral installment contracts of adhesion such as are credit card member agreements. (2). As the superior party in a unilateral contract cannot sue for breach of contract, the banks file insurance claims on non-performing accounts and collect insurance on the account. Although the bank still was an actionable damage in pursuing a theory of "on an open account," the matter would require: (a). subrogation to the insurer, and (b). proof via authenticated evidence and testimony of every single transaction to show a deficit; so, banks charge-off and sell

evidence of debt to attorneys in the illicit business of debt buying for a typical six cents on the dollar. (3). Since installment contracts, such as are credit card contracts, are <u>not</u> negotiable instruments and cannot be sold for value under holder-in-due-course theories of law, what ever debt had inured is extinguished along with the contract itself when sold. (4). Attorneys in the illicit business of debt buying then use trickery, deceit, and harassment has tools to extort sums from persons no longer subject to lawful prosecution or liable for the extinguished debt.

This court is noticed: the above scenario is a blatant violation of 18 U.S.C. §§ 1341[9] & 1962[10] often, whether unwittingly or wittingly, requiring the complicity of state court judges (<u>and federal judges</u>), who, due to their duty to make inquiry, reasonable under the circumstances, gain complicity in racketeer by violating 18 U.S.C. § 371[11] with federal judges also violating 18 U.S.C. §§ 4[12] & 1001[13].

<u>Memorandum in support of the conclusion that debt buying is a substantial Nationwide scam organized to serve the incredible glut of surplus lawyers</u>

Attorney General Erases $3.5 million from Debt Purchaser's Portfolio August 19, 2005

Attorney General (West Virginia) Darrell McGraw announced today that his office has entered into a settlement agreement with Midland Credit Management, Inc. ("Midland") of San Diego, California resulting in the cancellation of more than $3.5 million in credit card debt allegedly owed by approximately 3,500 West Virginia

consumers. <u>Midland had previously purchased the charged-off accounts for collection from Cross Country Bank of Wilmington, Delaware.</u>

<u>Attorney General McGraw's office began investigating Midland in 2004 after receiving complaints from West Virginia consumers who had been sued or contacted by Midland to collect debts originally owed to Cross Country Bank.</u> Cross Country Bank is a credit card bank that markets high interest credit cards to consumers with bad credit histories. McGraw's office settled its lawsuit against Cross County Bank on June 21, 2005.

McGraw's office questioned the propriety of collecting the accounts based upon the same concerns that led to his lawsuit against Cross Country Bank. As a result of these concerns, the Attorney General requested that Midland close all of the accounts with a zero balance and notify credit bureaus to delete all references to the account from consumers' credit records. Midland agreed to do so in the settlement McGraw's office announced today.

Attorney General McGraw stated, "I commend Midland for promptly doing the right thing after we brought our concerns about these accounts to its attention. As a result of our agreement with Midland, approximately 3,536 West Virginia consumers have been relieved of all further obligations to pay $3,548,539.80 in credit card debt. Because the accounts have also been deleted from credit records, consumers will no longer be denied access to new credit as a result of these accounts."

Source: Attorney General Press Release

Challenges for Collecting Purchased Debt

James M. McNeile

Cohen McNeile Pappas & Shuttleworth P.C., Leawood, Kansas

All of us know it is more difficult to collect purchased debt than originated debt by using the traditional legal collection approach. The difficulties from a lawyer's perspective lie manly in problems of proof. A creditor that originates debt has access to the documentation that courts require attorneys to introduce as evidence in order to obtain a judgment. Many debt purchasers either do not have access to the source documents or can only obtain those documents at great cost. How then can debt purchasers utilize the court system to collect debts that are legally due and valid? Ken Gelhaus reports that in New York the problems of collecting on purchased debt have increased greatly in the last year. At one time in New York, court clerks entered a default judgment on claims for "sums certain" without running the papers past a judge for review and signature. In recent months, however, clerks are refusing to do so and requiring that a judge's order granting default judgment be obtained.

In on of his recent cases, Ken reports that he applied for a default judgment using the affidavit of an officer of the purchasing plaintiff. The affidavit, although able to reference the date of the purchase of the debt and the balance purchased, was deficient in that it did not include any actual business records of the originating creditor. The court found that the affidavit of the debt purchaser was insufficient and conclusory. The court suggested the debt purchaser furnish a copy of the assignment or contract assigning the claims, along with a copy of any statement or record clearly demonstrating the calculation and the amount of the claim. If monthly statements were furnished to the

defendant, copies of the most recently sent statements should be annexed. Reliable and factual information concerning the claim is required.

Even if we as attorneys include such items, they are business records of the originating creditor, not the purchasing plaintiff. At least in New York, these business records would have no probative value, because no one at the purchasing plaintiff has "personal knowledge" of the creation, maintenance, issuance, and tracking of the statements. In the eyes of the court, such affidavits are hearsay and therefore not admissible.

A purchasing plaintiff is unable to swear to the authenticity of the originating or source documents of a credit transaction because they do not have personal knowledge of the events which transpired at that period of time in the life of the credit agreement. The original cardholder agreement, any correspondence, and monthly statements issued by the original credit grantor are not admissible as the purchasing plaintiff's business records, as the purchasing plaintiff has no personal knowledge of how those records were created or maintained.

How then can the purchasing plaintiff's counsel obtain a judgment for their client in the face of a court's refusal to grant judgment on a legitimate debt purchased by a third-party? The obvious answer is to obtain the affidavit of the originating creditor and annex the documents of the originating creditor to their affidavit. The originating creditor would have actual and personal knowledge of the events which led to the creation of the debt, as well as the events which lead to the sale of the debt. A second alternative would be to attempt to obtain a novation of the original credit agreement, which might be accomplished by either obtaining a signed statement from the debtor agreeing to pay the

balance owed. Alternatively, if the debtor refuses to sign such a statement, the purchaser could send monthly statements which, if not objected to by the debtor, might be introduced by way of the purchasing plaintiff's affidavit, indicating that no objection had been made to the statements of account. Therefore, the debtors are estopped from denying the existence of the balance.

Absent a willingness by debt sellers to sign a business records affidavit as to the origination and sale of the account, or a novation by the purchasing plaintiff of the original debt, lawyers will be increasingly hard pressed to obtain judgments for legitimate debts purchased by debt buyers. If purchasing plaintiffs wish to continue to be able to use the court system to enforce their purchased debt, it is going to be increasingly necessary for documentation to be readily available for their counsel and the courts.

Notice: The NARCA Newsletter is a publication of the Association of Retail Collection Attorneys with headquarters at 1620 I Street, NW Ste 615, in Washington,

### Statement of venue

Venue is appropriate in the Western District of Kentucky as the predicate acts of fraud and extortion committed Christine D. Campbell, Mervin W. Warren Jr., Kenneth G. Belt, Heather R. Peters, Donna Pearson, John Harrison and John Aubrey occurred in the Western District of Kentucky.

Theory of the case

Mapother & Mapother, is engaged in the debt collection fraud racket.  HOW THE

DEBT COLLECTION FRAUD RACKET WORKS: Mapother & Mapother is a subset of

the debt collection racket, a wide-spread, far-reaching scam composed of  artists such as

Mapother & Mapother Attorney's Christine D. Campbell, Mervin W. Warren Jr. Kenneth

Belt and Heather R. Peters.  How the scam works: In a back room of the Chicago Board

of Trade, worthless bundles of commercial paper in the form of copies of charged off

consumer debt are sold at auction or from "debt purchasing" organizations such as

Collins  Financial  Services,  Inc.,  a.k.a.  sales@cfsi.net,  Money  World  Network,

foreclosurestore.com,  charged-offclearringhouse.com,  and  loans@money-fiN.A.nce.us.

The typical investment in charged of evidence of debt is six cents on the dollar. Actors

such as Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R.

Peters can also rely on such resources as collectionindustry.com.  The typical face value

of the bundles is substantial.  The original makers of the loans including mortgagees are

rarely harmed because they often have hypothecated the loans and have risked nothing.

Actors up line from such artists as Christine D. Campbell, Mervin W. Warren Jr.,

Kenneth Belt and Heather R. Peters break apart the bundles and resell the worthless

commercial paper in clusters based on who the  original lenders is and what the

geographic location of the origin of the individual copies. Artists such as Christine D.

Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters are the actual "end

users," putative holders in due course, then end users such as Christine D. Campbell,

Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters allege they are third party

debt collectors attempting to collect for the original maker of the loan.  Artists such as

Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters, who, for a very small investment, use threat, coercion, intimidation, and deception to defraud and extort money and property from parties such as Donald C. FitzGerald.  Whenever necessary, scam artists such as Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters, subject parties such as Donald C. FitzGerald to sham legal proceedings where: (1). Standing to sue in the respective state court is never proved, (2). Standing to sue as a bona. fide holder-in-due-course is never proved, (3). Corporate charter authority to make consumer loans is never proved, (4). Corporate charter authority to sue for damages on consumer loans is never proved, (5). Damages in fact are never proved, and (6). Delegation of authority from enterprises such as Citibank S.D., N.A. (USA) to predicate actors such as Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters is never proved. When defendants raise any defense whatsoever, public officials, are, or pretend to, be absolutely "clueless."  This racket is particularly heinous in the case of credit card contracts, which as a continuing series of offers to contract, are non-transferable. The scam is complete when artists such as Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters, with the cooperation of local officials, defraud parties such as Donald C. FitzGerald.

FIRST PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961[14], 1962[15], & 1341[16]: One or about August 19th 2005 I received mailed from Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202, predicate actor Kenneth G. Belt uttered a document through the Untied States Mail which Kenneth G. Belt knew was

false with the intention that Donald C. FitzGerald rely on the false document to the detriment of loosing over twelve thousand dollars.

SECOND PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: On or before August 16 2005, predicate actor Kenneth G. Belt, acting in behalf of Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202 filed a fraudulent security instrument into the county records of Jefferson County, Kentucky.

THIRD PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: On or before October 4th 2005, predicate actor Heather R. Peters, acting in behalf of Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202 filed a fraudulent security instrument into the county records of Jefferson County, Kentucky.

FOUTH PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: October 5th 2005, December 20th 2006, January 18th 2007, February 8th 2007, May 29th 2007, predicate actor Christine D. Campbell, uttered documents through the Untied States Mail, mailed from Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202 which Christine D. Campbell, knew were false with the intention that Donald C. FitzGerald rely on these false documents to the detriment of loosing over twelve thousand dollars.

FIFTH PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: On or before February 5th 2007, predicate actor John Harrison filed a prejudged and misleading report into the county records of Jefferson County, Kentucky.

SIXTH PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: One or about March 20th 2007 I received mailed from Citibank S.D N.A. Office of the President, P.O. Box 6000 Sioux Falls, SD. 57117-6000 predicate actor Donna. Pearson uttered a document through the Untied States Mail which Donna. Pearson knew was false with the intention that Donald C. FitzGerald rely on the false document to the detriment of loosing over twelve thousand dollars.

SEVNETH PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: One or about August 19th 2005 I received mailed from Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202, predicate actor Mervin Warren uttered a document through the Untied States Mail which Mervin Warren knew was false with the intention that Donald C. FitzGerald rely on the false document to the detriment of loosing over twelve thousand dollars.

EIGHTH PREDICATE ACT IN VIOLATION OF 18 USC §§ 1961, 1962, & 1341: On or before June 25th 2007, predicate actor Heather R. Peters, acting in behalf of Mapother & Mapother, 801 West Jefferson Street. Louisville, KY. 40202 filed a fraudulent security instrument into the county records of Jefferson County, Kentucky.

Plaintiffs' RICO case statement detailing the racketeering enterprise,

the predicate acts of racketeering, and the economic purpose

Mapother & Mapother is running a racket by taking money and property from parties situated similarly to Donald C. FitzGerald to satisfy a nonexistent "debts."  This court shall notice that Donald C. FitzGerald, in this complaint, has <u>testified</u> of injury to property and business by reason of acts which violate section 4 of the Clayton Act. See Attick v. Valeria Associates, L.P.,  S.D. N.Y. 1992, 835 F. Supp. 103. Donald C. FitzGerald has articulated violations of racketeering laws,  testified that the violations injured both business and property warranting treble damages. See Avirgan v. Hull, C.A. 11 (Fla.) 1991, 932 F.2d 1572. In Naming Mapother & Mapother., an enterprise to which Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters belong, Donald C. FitzGerald has established that an enterprise exists which undeniably affects interstate commerce. See Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639, C.A.D.C. 1990, 913 F.2d 948, 286 U.S. App. D.C. 182, certiorari denied 111 S.Ct. 2839, 501 U.S. 1222, 115 L.Ed. 2d 1007. Donald C. FitzGerald has standing to sue under RICO as Donald C. FitzGerald has shown violations of RICO, injury to business and property, and causation of the injury by the violations. See Hecht v. Commerce Clearing House, Inc. C.A. 2 (N.Y.) 1990, 897 F.2d 21, 100 A.L.R. Fed. 655. Donald C. FitzGerald has perfected a RICO claim by showing the existence of a RICO enterprise, showing a pattern of racketeering activity: fraud, shown nexus between the defendants and the pattern of frauds, and shown resulting injury to business and property. See  Standard Chlorine of Delaware, Inc. v. Sinibaldi, D.Del.

1992, 821 F. Supp. 232. Donald C. FitzGerald has demonstrated that Donald C. FitzGerald sustained injury as proximate result of the pattern of frauds by the defendants. See Jordan v. Herman, F.D. Pa. 1992, 792 F. Supp. 380. Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters membership in the enterprise, Mapother & Mapother Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters to do illicit business benefiting Mapother & Mapother directly and indirectly. Mapother & Mapother. is able to recoup and profit by Mapother & Mapother's investment affecting interstate commerce. See Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc. S.D.N.Y. 1987, 114 F.R.D. 684. Donald C. FitzGerald clearly articulated being Christine D. Campbell, Mervin W. Warren and Kenneth G. Belt's target of extortion and resulting business and property loses. See Polletier v. Zweifel, C.A. 11 (Ga.) 1991, 921 F.2d 1465, rehearing denied 931 F.2d 901, certiorari denied 112 S.Ct. 167, 502 U.S. 855, 116 L.Ed. 131. The cause-in-fact that but-for the chicanery of the enterprise members, Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters, Donald C. FitzGerald would have been able to protect his property interests and his business would not have incurred tangible losses is sufficient to state factual causation for provision of RICO act providing for treble damages. See KhuraN.A. v. Innovative Heath Care Systems, Inc. , C.A. 5 (La.) 1997, 130 F.3d 143, vacated 119 S.Ct. 442, 525 U.S. 979, 142 L.Ed. 2d 397, on remand 164 F.3d 900. Donald C. FitzGerald's reliance on traditional principles of proximate causation applying to RICO cases is illustrated in the well pleaded, testimony that Donald C. FitzGerald was the target of extortion and his business interfered with by predicate acts of the defendants. See In re American Honda Motor Co., Inc. Dealership Relations

Litigation, D.Md. 1996, 941 F.Supp. 528. There exists an undeniable relationship between the acts of the defendants and the damage to property and business interests of Donald C. FitzGerald. See Red Ball Interior Demolition Corp. v. Palmadessa, S.D.N.Y. 1995, 908 F.Supp. 1226. The damage caused by the defendants was the Natural and reasonably foreseeable consequence of the frauds promulgated by the defendants. See Protter v. Nathan's Famous Systems, Inc. E.D. N.Y. 1995, 904 F.Supp. 101. The fraud by the defendants was the legal cause of Donald C. FitzGerald being the target of extortion, his business interests being interfered with,  and related damages. See Prudential Ins. Co. of America v. U.S. Gypsum Co. D.N.J. 1993, 828 F.Supp. 287.  The enterprise, Mapother & Mapother is evident to a high degree and it is also evident to a high degree that associates such as Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters act as a continuing unit. See Compagnie de Reassuarance D'lle de France v. New England Reinsurance Corp. D. Mass. 1993, 825 F.Supp. 370. It is undeniable that Mapother & Mapother receives money for defrauding parties such as Donald C. FitzGerald  and Mapother & Mapother's  receipts and compensation to collateral enterprises represents their necessary investment in the class of business to which Mapother & Mapother belongs for the continuing privilege of, in the vernacular, continuing to rip people off in phony, sham proceedings. See Grand Cent. Sanitation, Inc. v. First N.A. Bank of Palmerton, M.D.Pa. 1992, 816 F.Supp. 299. Undeniably, the defendants  have used the United States Mail for purposes of fraud and extortion. Mapother & Mapother's pattern of attacks on Donald C. FitzGerald  is but one of many of examples of fraud by Mapother & Mapother and other enterprises similarly constituted.

Remedy sought and prayer for relief

The Federal District Court has a duty to order the dissolution of  under authority of 18 USC § 1964(a). The Federal District Court is empowered to order treble damages as remedial to the racketeering activities of  "RICO" enterprises and their constituent members under authority of 18 USC § 1964(c)[17]. A jury's determination that  by and through Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters has engaged in a pattern of frauds rising to a level of racketeering requires this court's order to Mapother & Mapother to dissolve and cease operations. A jury's determination that Mapother & Mapother,  by and through Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters, committed or aided and abetted two or more predicate acts of fraud resulting in defrauding Donald C. FitzGerald and others similarly situated of property and business interests justly requires ordering Mapother & Mapother, and  Christine D. Campbell, Mervin W. Warren Jr., Kenneth Belt and Heather R. Peters to compensate all parties in a sum not less than three times the collective sums of property and losses to businesses of all who are similarly situated

TRIAL BY JURY DEMANDED

Prepared and submitted by:

Donald C. FitzGerald

815 Inverness Ave
Louisville KY 40214
502-363-2023
Don@TJCL.INFo

19

Certificate of Service

I, Don FitzGerald, Certify that on Wednesday , July 25, 2007, I mailed a true and correct copy of the above and forgoing to; Mervin W. Warren,  Kenneth G. Belt, Christine D. Campbell,  Heather R. Peters.

Copies Mailed to;

Mapother & Mapother

801 West Jefferson Street

Louisville, KY.  40202


Citibank S.D. n.a.

c/o Mapother & Mapother

801 West Jefferson Street

Louisville, KY.  40202


Donna. Pearson

Office of the President,

Citibank S.D.N.A

 P.O. Box 6000

Sioux Falls, SD. 57117-6000

John Harrison

Fourth Floor Old Jail Building

514 West Liberty St.

Louisville, KY. 40202


John Aubrey

531 Court Place Suite 604

Louisville, KY. 40202


Donald C. FitzGerald

Copy to:

Alberto R. Gonzales, Attorney General of the United States

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington, DC 20530-0001